## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Earl Rivers, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:10-cv-00314-RMG |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the

Commissioner denying Plaintiff's claim for Supplemental Security Income ("SSI") and Disability

Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(B) and Local Rule 73.02,

D.S.C., this matter was referred to a Magistrate Judge for pretrial handling. The Magistrate

Judge recommended that the decision of the Commissioner be reversed, and the case be

remanded to the Commissioner for an award of benefits to Plaintiff based on a disability

commencing October 1, 2003. (Dkt. No. 38.) The Commissioner objected to the R&R. (Dkt. No.

45.) After having conducted a *de novo* review of the Record, and after considering the objections,

the Court adopts the recommendation of the Magistrate Judge in part. Thus, for the reasons set

forth below and in the R&R, the Court reverses the decision of the Commissioner. However,

instead of granting benefits, this Court remands the case to the Commissioner for further action

consistent with this Order.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. Mathews v. Weber, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir.1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir.1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987).

## DISCUSSION

Plaintiff filed his current claims for DIB and SSI on February 12, 2004, wherein he alleged that he became disabled on October 1, 2003, at age 44, due to back and foot impairments. (Tr. 165-68, 179.) When this application was denied at the initial level, Plaintiff retained counsel who arranged for Plaintiff to undergo formal IQ and achievement testing by Randolph Waid, Ph.D., a clinical psychologist. (Tr. 330-31.) The tests performed by Dr. Waid in May of 2004 indicated that Plaintiff had a full scale IQ of 64, verbal IQ of 66, and performance IQ of 67. (Tr. 330.) Working memory was assessed at the seventh lowest percentile, processing speed at the lowest third percentile, and perceptual organization skills and verbal comprehension skills at the lowest first percentile. (Tr. 330.) Academic achievement testing revealed that Plaintiff was functionally illiterate with reading, spelling, and arithmetic all assessed at the lowest .02 percentile. (Tr. 331.) Dr. Waid determined that Plaintiff put forth a good effort and that the scores were a valid depiction of Plaintiff's intellectual and academic skills. (Id.) In addition, Dr. Waid stated, "In my professional opinion, it is evident that Mr. Rivers' intellectual and educational deficits existed throughout his developmental process and were present when he attained the age of 22." (Tr. 44.)

In January of 2005, Plaintiff's claims were denied on reconsideration by the Social Security Administration. (Tr. 59-63.) Plaintiff timely requested a hearing, and on September 6,

2005, ALJ Edward T. Morriss held a hearing on Plaintiff's claims. (Tr. 718-38.) The ALJ issued

a decision on February 24, 2006, concluding that Plaintiff was not disabled for purposes of the

Social Security Act (the "Act"). (Tr. 64-74.) Plaintiff requested review of that decision. (Tr. 123,

125.) In the meantime, Plaintiff filed another set of disability applications on April 24, 2006, and

the state agency awarded Plaintiff benefits based on these applications. (Tr. 23, 32, 127.) On

January 8, 2008, the Appeals Council granted Plaintiff review of the ALJ's decision, combined

the claims, and remanded them for reconsideration by the ALJ. (Tr. 30-34, 127-29.)

The ALJ conducted a second hearing on August 12, 2008; Plaintiff, Plaintiff's attorney,

and a vocational expert were present. (Tr. 739-70.) The ALJ issued a decision on September 24,

2008, wherein the ALJ concluded that Plaintiff was not disabled under §§ 216(i), 223(d) and

1614(a)(3)(A) of the Act. (Tr. 20-29.) Although the ALJ found that Plaintiff had severe

impairments of status post lumbar discectomy and fusion and borderline intellectual functioning,

he concluded the Plaintiff did not have an impairment or combination of impairments that meets

or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Tr. 26.) In evaluating Plaintiff's impairments pursuant to Listing 12.05, the ALJ discussed Dr.

Waid's tests and opinions and stated, *inter alia*,

> Dr. Waid noted that the claimant was functionally illiterate. In a letter dated April
> 25, 2007, Dr. Waid indicated that the claimant left formal education pursuits
> following the ninth grade and reported earning a GED while in the job corp;
> however, in his experience, he had discovered that the GEDs obtained in the job
> corp are not competitive GEDs, but very much like a social promotion. In this
> case I find that there is an absence of evidence of adaptive deficits and no real
> evidence of manifestation during the developmental phase before age 22. I find no
> evidence to show that the claimant had significant limits during the developmental
> period because of his significant work history, and I do not accept the IQ scores of
> Dr. Waid as a valid indicator of the claimant's life-long abilities.

(Tr. 26-27.)

The ALJ also found that Plaintiff had the residual functional capacity to perform light work but because of Plaintiff's "special education background," concentration deficits would limit Plaintiff to the performance of unskilled work. (Tr. 27.) With these restrictions, the ALJ found Plaintiff was able to perform his past relevant work as a security guard. (Tr. 28-29.) Plaintiff's request for benefits was therefore denied. (Tr. 29.)

In her Report and Recommendation, Magistrate Judge Austin recommended reversing the Commissioner's decision denying benefits, and remanding the case to the Commissioner for an award of benefits based on disability commencing October 1, 2003. (R&R at 34.) The Magistrate Judge concluded the ALJ failed to properly evaluate whether Plaintiff met 12.05C of the listings, stating that "substantial evidence does not support the ALJ's finding that Plaintiff did not meet Listing 12.05C . . . ." (See R&R at 18, 32.) This Court agrees with the Magistrate Judge's analysis.

> Listing 12.05 reads, in relevant part,
>
> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

As noted above, the ALJ concluded that "there is an absence of evidence of adaptive

deficits and no real evidence of manifestation during the developmental phase before age 22."

(Tr. 26.) The ALJ also concluded that there is "no evidence to show that the claimant had

significant limits during the developmental period because of his significant work history" and

rejected the IQ scores of Dr. Waid "as a valid indicator of the claimant's life-long abilities." (Tr.

26-27.) Such conclusions are not supported by substantial evidence. First, the record does contain

evidence of adaptive deficits.[1] Deficits in "adaptive functioning" "can include limitations in such

areas as communication, self care, functional academic skills, home living, social/interpersonal

skills, use of community resources, self direction, work, leisure, health and safety." Cagle v.

Astrue, No. 9:09-cv-3250-RMG, 2011 WL 322554, at *2 (D.S.C. Jan. 28, 2011) (citing Atkins v.

Virginia, 536 U.S. 304, 309 n.3 (2002)). The record is replete with evidence that Plaintiff had a

deficit in the area of functional academic skills. Plaintiff was classified as a special needs student

---

[1]In his Objections, the Commissioner contends that the Magistrate Judge does not address
"the evidence cited by the ALJ in support of his finding that Plaintiff did not have deficits in
adaptive functioning: Plaintiff's work history." (Objections at 3-4.) The Commissioner states that
"Plaintiff's work as a cement finisher is evidence of a very high level of functioning that is
inconsistent with mental retardation." (Id. at 4.) The Court finds this objection to be without
merit. Magistrate Judge Austin did address the evidence of Plaintiff's work history but simply
did not agree with the Commissioner's position. She correctly concluded that the Commissioner
may not rely on work history to prove non-disability when the Listing 12.05C criteria are met.
(See R&R at 26-27.) In Luckey v. U.S. Dept. Of Health & Human Services, 890 F.2d 666(4th
Cir. 1989), the Secretary argued the claimant's low IQ was not manifested during the
developmental years "as evidenced by the fact that Luckey worked for 23 years." 890 F.2d at
668. Here, the ALJ stated that he found "no evidence to show that the claimant had significant
limits during the developmental period because of his significant work history." (Tr. 26-27.) In
Luckey, just as in the case sub judice, there was no evidence the claimant's IQ had changed, and
there was evidence of illiteracy. In Luckey, the Fourth Circuit stated that the "Secretary may not
rely upon previous work history to prove non-disability where the section 12.05(C) criteria are
met." Luckey, 890 F.2d at 669. The Commissioner is attempting to do exactly what is prohibited
by Luckey. The objection is therefore without merit.

and underwent repetitive evaluation in his first three years of education. (Tr. 43.) Teachers'

observations in school records indicate that Plaintiff was "inattentive with marked aggressiveness

and speech defect." (Tr. 43, 231.) Intellectual testing using the California Test of Mental

Maturity resulted in Full Scale IQs of 53, 59, and 53 as of his placement at the third grade. (Id.)

Plaintiff dropped out of school in the ninth grade. While in the ninth grade, Plaintiff failed

driver's education, English, and physical science and obtained a D in general math and physical

education. (Tr. 43, 233.) Plaintiff did receive his GED through the Job Corp, though there is

evidence in the record–in the form of Dr. Waid's opinion–that GEDs from the Job Corp "are not

competitive GEDs." (Tr. 44.) In May of 2004, Dr. Waid evaluated Plaintiff and concluded that

Plaintiff "performance on the Wechsler Adult Intelligence Scale-III (WAIS-III) classified his

intellectual functioning to be in the extremely low/deficit range with a Full Scale I.Q. of 64, a

Verbal I.Q. of 66, and a Performance I.Q. of 67." (Tr. 330.) Although Dr. Waid "observed [that

Plaintiff] put forth good effort," Dr. Waid concluded Plaintiff was "functionally illiterate." (Tr.

331.) Thus, there was a significant amount of evidence in the record of Plaintiff's deficiency in

functional academic skills. Furthermore, like the Magistrate Judge concluded, there is evidence

that Plaintiff had deficiencies in two other areas: social/interpersonal skills and communication.

(See R&R at 22-23.) The ALJ's conclusion that the record lacked evidence of adaptive deficits

was therefore not based upon substantial evidence.[2] See Cagle, 2011 WL 322554, at *3 (finding

---

[2]As the Report and Recommendation notes, in January of 2005, a state agency
psychologist, Samuel Goots, Ph.D., reviewed the medical evidence, completed a psychiatric
review technique form, and assessed Plaintiff's mental residual functional capacity. (Tr. 401-18.)
Dr. Goots found Plaintiff had borderline intellectual functioning and that Plaintiff's IQ scores
were in the range of mental retardation. Without providing any reasoning, Dr. Goots concluded
that there was no evidence of deficits in Plaintiff's adaptive functioning prior to age eighteen.
(Tr. 402.)

of reading and spelling skills at the second and third grade level demonstrates a deficit in

"functional academic skills); Smith v. Astrue, No. 3:10-66-HMH-JRM, 2011 WL 846833, at *3

(D.S.C. Mar. 7, 2011) ("Smith's school records, standardized test scores from seventh grade, and

her IQ as measured by Dr. Fishburne constitute substantial evidence that shows her impairment

manifested itself prior to the age of 22. Based on the foregoing, the court concludes that the

ALJ's finding that 'there is no evidence of deficits in adaptive functioning prior to age 22' is not

supported by substantial evidence.").

The ALJ's conclusion is likewise not supported by substantial evidence because, contrary

to his statement, there is evidence that demonstrates or supports the onset of the impairment

before age 22. A plaintiff is not required to present evidence of an IQ test that took place prior to

age 22 in order to meet Listing 12.05(C). See Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir.

1985); see also Davis v. Astrue, No. 2:07-cv-1621-JFA-RSC, 2008 WL 1826493, at *4 (D.S.C.

Apr. 23, 2008). Furthermore, as the Magistrate Judge noted, evidence of illiteracy, despite a

claimant's education, supports a finding that a claimant's mental retardation occurred before age

twenty-two. See Turner v. Bowen, 856 F.2d 695, 699 (4th Cir. 1988). Indeed, "in the absence of

any evidence of a change in a claimant's intelligence functioning, it must be assumed that the

---

In his Objections, the Commissioner objects to the Magistrate Judge's statement that
"[t]he record contains substantial evidence to support a finding that Plaintiff displayed defects in
adaptive functioning." (Objections at 3; see R&R at 25.) The Court agrees with the
Commissioner that such statement does not reflect the proper standard of review. Such statement,
however, does not mean the Magistrate Judge applied the incorrect standard of review. On the
contrary, the Court finds the Magistrate Judge did apply the proper standard. In that same
paragraph to which the Commissioner objects, the Magistrate Judge stated that the "ALJ's denial
based on a failure to show a deficit in adaptive functioning is not supported by substantial
evidence." (R&R at 25.)

claimant's IQ had remained relatively constant." <u>Luckey v. U.S. Dep't of Health & Human</u>

<u>Servs.</u>, 890 F.2d at 668 (citing <u>Branham</u>, 775 F.2d at 1274).

As the Magistrate Judge concluded, the ALJ pointed to no evidence in the record upon

which to base a conclusion that Plaintiff's IQ changed. (<u>See</u> R&R at 26.) Without explanation,

the ALJ rejected the IQ scores determined by Dr. Waid.[3] Furthermore, while Dr. Waid did

analyze Plaintiff after Plaintiff had reached age twenty-two, intellectual testing using the

California Test of Mental Maturity resulted in Full Scale IQs of 53, 59, and 53 as of Plaintiff's

placement at the third grade. (Tr. 43, 231.) Plaintiff clearly had difficulty in school, and the

record reveals that Plaintiff is functionally illiterate. Although Dr. Goots concluded that there

was no evidence of deficits in Plaintiff's adaptive functioning prior to age eighteen, this

---

[3]In order to meet Listing 12.05C, the claimant must show a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The Court concludes this requirement was satisfied. Dr. Waid's testing revealed a Full Scale I.Q. of 64, a Verbal I.Q. of 66, and a Performance I.Q. of 67." (Tr. 330.) While the ALJ rejected those scores, he failed to explain why, even though testing from the third grade resulted in Full Scale IQs of 53, 59, and 53. Such rejection is erroneous. "Generally, the results obtained by a licensed psychologist following the administration of accepted intelligence tests are entitled to considerable weight in Social Security cases although they are not required to be accepted." <u>Maybank v. Astrue</u>, No.4:08-0643-MBS, 2009 WL 2855461, at *11 (D.S.C. Aug. 31, 2009) (citing <u>Clark v. Apfel</u>, 141 F.3d 1253, 1255 (8th Cir.1998); <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir.1996); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir.1988); <u>Foster v. Heckler</u>, 780 F.2d 1125, 1130 (4th Cir.1986)). However, the Commissioner may "reject such scores if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving or has more advanced functional capacities than would be expected from someone with a below-average I.Q." <u>Maybank</u>, 2009 WL 2855461, at *11 (citing <u>Clark</u>, 141 F.3d at 1255). In the instant case, no reason was provided for rejecting Dr. Waid's IQ scores, and while Dr. Goots concluded there was no evidence of deficits in Plaintiff's adaptive functioning prior to age eighteen, it does not appear that Dr. Goots provided any IQ scores or provided any reasoning for his conclusion. The Court concludes Plaintiff has shown a "valid verbal, performance, or full scale IQ of 60 through 70" as required for Listing 12.05C.

conclusion is accompanied by no analysis, nor is there any evidence in the record to support that conclusion. (See Tr. 402.)

As further support for his conclusion that there was no evidence of manifestation during the period before age 22, the ALJ looked at Plaintiff's extensive work history. (See Tr. 26-27.) This was error. As the Fourth Circuit stated in Luckey, the Commissioner "may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met: 'When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.'" Luckey, 890 F.2d at 669 (quoting Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987)); see also Davis, 2008 WL 1826493, at *5 ("While the administrative law judge contended that Plaintiff's low IQ was not manifested during her developmental years as evidenced by the fact that she worked for 33 years, her work is no bar to an award of benefits. A plaintiff whose impairment meets a Listing is disabled without regard to the fact that he or she worked in the past or could return to his or her past work."). As a result, the ALJ's determination that there is "no real evidence of manifestation during the developmental phase before age 22" is not supported by substantial evidence. (See Tr. 26.)

Although the Court has already determined that Plaintiff has a "valid verbal, performance, or full scale IQ of 60 through 70" as required for Listing 12.05C, in order to meet that Listing, the Plaintiff must also have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. As Magistrate Judge Austin concluded, "[b]ecause the ALJ found Plaintiff suffers from the 'severe impairments' of status post lumbar discectomy and fusion and borderline intellectual functioning17 [R. 26], the second prong of 12.05C is satisfied." (R&R at 31-32.) For the reasons

discussed herein, the ALJ's conclusion that Plaintiff did not meet Listing 12.05C was not based on substantial evidence, and the decision is therefore reversed.

The Magistrate Judge recommended foregoing a remand and making an outright award of benefits. (See R&R at 32-33.) "Whether to reverse and remand for an award of benefits or remand for a new hearing rests within the sound discretion of the district court." Smith v. Astrue, No. 3:10-66-HMH-JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) (citing Edwards v. Bowen, 672 F. Supp. 230, 237 (E.D.N.C. 1987)); see also Graham v. Astrue, 733 F. Supp. 2d 724, 728 (E.D.N.C. 2010). "An award of benefits is more appropriate when further proceedings would not serve any useful purpose." Davis, 2008 WL 1826493, at *5 (citing Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1985)). An award of benefits is also more appropriate "when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed." Id. (citing Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984)); see also Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974) (reversal without remand is appropriate "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose").

The Commissioner objects to a remand to award benefits, contending the passage of time should not be held against the Commissioner when Plaintiff did not raise the issue of mental retardation until June of 2006. (See Objections at 6.) The Commissioner further contends that if this Court does not affirm the ALJ's decision, a remand would serve a useful purpose, in that

"further proceedings would allow the ALJ to remedy any errors or further develop the record evidence (specifically as to Plaintiff's alleged deficits in adaptive functioning)." (Id. at 7.) In addition, the Commissioner contends a remand is necessary because the record "does not indicate any findings as to Plaintiff's income and resources." (Id.)

A review of the record reveals that a remand is proper. As the Commissioner notes, "[t]o be eligible for SSI benefits, a person must be 'aged,' . . . or 'blind,' or 'disabled,' as those terms are defined in § 1614 of the Act, . . . and his income and resources must be below the levels specified in § 1611(a), as amended . . ." Schweiker v. Wilson, 450 U.S. 221, 223 n.2 (1981); see also 42 U.S.C. § 1382; 42 U.S.C. § 1382(a). The ALJ did not discuss Plaintiff's income level and resources, and the record contains some evidence that Plaintiff may be receiving monthly workers' compensation payments. (See Tr. 218, 222.) The Court therefore concludes that remand is the appropriate action.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case is **REMANDED** for further action consistent with this Order.

**AND IT IS SO ORDERED.**

The Honorable Richard Mark Gergel
United States District Judge

**Charleston, South Carolina**
**June &, 2011**